**UNITED STATES of America, Plaintiff-Appellee,**

v.

**The GOLF CLUB COMPANY et al., Defendants-Appellants.**

**No. 29320.**

United States Court of Appeals, Fifth Circuit.

Dec. 8, 1970.

Robert Patrick, Powell, Goldstein, Fraser & Murphy, Richard H. Vincent, Atlanta, Ga., for defendants-appellants.

John W. Stokes, Jr., U. S. Atty., Beverly B. Bates, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before THORNBERRY, GOLDBERG and AINSWORTH, Circuit Judges.

THORNBERRY, Circuit Judge:

In this case the United States held three security deeds on land located in Georgia and mortgaged by the appellants. When the appellants defaulted on

the indebtedness underlying these deeds, the United States conducted foreclosure sales at which the property was bid in by officials of the Federal Housing Administration.

■ Under Georgia law, all foreclosure sales must be confirmed by a court before the creditor may sue the debtor for any deficiency resulting from the sale. Ga.Code Ann. § 67–1503–04 (Supp. 1969).[1]

■ The obvious purpose of this statute is to protect debtors from deficiency judgments when the forced sale of their property brings less than fair market value. Pursuant to this statute, and contemplating a deficiency action, the United States brought this suit in the United States District Court of the Northern District of Georgia seeking confirmation of the foreclosure sales. After taking testimony, the trial judge found that the sale price of the property was "considerably less" than the true market value of the land and declined to confirm the sale. The United States does not appeal from this determination. The appellants, however, not satisfied with a denial of confirmation,[2] sought further to have the trial court order a resale of the land pursuant to another section of the Georgia confirmation statute, which provides that "[t]he court may, for good cause shown, order a resale of the property." Ga.Code Ann. § 67–1505 (Supp. 1969). Appellants contend that this section *demands* a resale when there is a disposition of property at a price much lower than its fair market value which deprives mortgagors of their equity of redemption in the property. What the value of appellants' equity in this property was we do not know. Nor do we deem it necessary to know, for regardless of whether appellants were deprived of the full value of their equity, we believe that section 67–1505 imposes no duty on the court to order resales, but rather leaves the ordering of resales to the discretion of the trial court. Appellants argue, however, that Georgia courts have construed this statute to *require* a resale in cases like theirs, citing Hinson v. First Nat'l Bank, 221 Ga. 408, 144 S.E.2d 765 (1965), and Langley v. Stone, 112 Ga. App. 237, 144 S.E.2d 627 (1965).

The *Langley* case is, we think, clearly inapplicable, for that case did not even involve the question of ordering a resale. In *Langley* the holder of first and second deeds to secure debts sold the property conveyed under the power of sale in the first security deed for $8,000 less than the fair market value. He was unsuccessful in having this first sale confirmed. He then instituted an action against Langley, the maker of the note secured by the second security deed. The only issue in the case was whether Langley could defend on grounds that the holder of the note failed to execute fairly his

---

1. The text of this statute is as follows:
    67–1503. *Confirmation of sales under powers*—When any real estate is sold on foreclosure, without legal process, under powers contained in security deeds, mortgages or other lien contracts, and at such sale said real estate does not bring the amount of the debt secured by such deed, mortgage, or contract, no action may be taken to obtain a deficiency judgment unless the person instituting the foreclosure proceedings shall, within 30 days after such sale, report the sale to the judge of the superior court of the county in which the land lies for confirmation and approval, and obtains an order of confirmation and approval thereon.
    67–1504. *Payment of the market value as a condition precedent to confirma-*

*tion of sale*—The court shall require evidence to show the true market value of the property sold under such powers, and shall not confirm the sale unless he is satisfied the property so sold brought its true market value on such foreclosure sale.

2. The instant case is not the appellants' first attempt to have these sales set aside. In Oglethorpe Co. v. Weaver, 5th Cir. 1970, 420 F.2d 696, 697, they brought an action to set aside the sales contending that bidding at the sales was chilled. Relief was denied on grounds that appellants had neither paid nor tendered the principal and interest admitted to be due on the indebtedness underlying the security deeds as required by Georgia law.

powers of sale under the first deed and therefore could cross-claim against the holder of the deeds for the difference between the fair market value at the time of the sale under power and the amount of indebtedness under both security deeds. In other words, Langley wanted to recover the value of his equity in the property. As we read *Langley*, the cross-claim was asserted pursuant to a recognized cause of action under Georgia law for breach of duty to exercise powers of sale fairly. *See* Motor Contract Co. v. Johnson, 61 Ga.App. 735, 7 S.E.2d 320 (1940). Having found that the holder of the note had failed to exercise his powers of sale fairly, the Georgia court simply permitted Langley's cross-claim for breach of duty. No resale was ordered, however, and we do not construe *Langley* as creating a requirement for resale when the power of sale has been unfairly exercised. Since we do not have before us the question whether appellants have a valid cause of action under Georgia law for breach of duty in exercising the power of sale, we conclude that the *Langley* case is inapposite.

The second case relied on by appellants is Hinson v. First Nat'l Bank, 221 Ga. 408, 144 S.E.2d 765. We find that this case also fails to support appellants' position. The issue in *Hinson* was whether a foreclosure sale should have been confirmed. The property in question, a unit of realty and personality, had been sold for a lump sum. The applicable statute was Ga.Code Ann. § 67–1504, which states that a "court * * * shall not confirm the sale unless he is satisfied that the property so sold brought its true market value on the foreclosure sale." The Supreme Court of Georgia held that the sale should not have been confirmed because it was impossible to tell what amount the realty sold for separately. The court concluded, therefore, that there

was "no evidence" to support the determination that the real property had sold for its fair market value. The court then stated that "[i]n such circumstances, the trial court should have ordered a resale of the property." The appellants rely heavily on this statement to support their contention that the Georgia courts have placed limitations on the trial court's discretion to order resales. The appellee, on the other hand, argues that this statement was dictum because the only issue before the court was whether there should have been a confirmation. To the extent that the court did not actually order a resale, the appellee is correct in its assertion that this statement was dictum. Moreover, it was in fact possible for the case to be terminated without a resale, by simply entering a final order denying the confirmation. On the other hand, the import of the court's holding was that there could be no confirmation whatever unless a resale was held at which the realty and personalty were sold as distinct items of property. To this extent, it could be argued that the statement was not dictum.

■■ Even if the statement is authoritative, however, we are not persuaded that it supports the appellants' argument. As we pointed out above, the trial court in *Hinson* had confirmed the sale and the appellants were arguing that confirmation should not have been granted. The only purpose that the court had in mentioning that a resale should have been ordered was to suggest a possible way to cure the error that had been committed in confirming the sale.[3] It is, of course, obvious that ordering a resale to *support* a confirmation is entirely different from ordering a resale as a further remedy after confirmation had been denied. In the former instance, ordering a resale is absolutely essential if there is to be a confirmation.[4] In the latter instance,

---

3. The other possible way to cure the error, of course, is simply to deny the confirmation altogether.

4. If the court wishes to confirm the sale, but there is insufficient evidence to prove

the price for which the property sold, or it is established that the property did not sell for its fair market value, then, of course, there must be a resale to clear these matters up before confirmation is possible. This much is required by the

ordering a resale has no bearing on the denial of the confirmation, but is an additional remedy available to protect the parties. We believe that section 67–1505 leaves the decision whether to afford this additional remedy to the sound discretion of the trial court.

Regardless of how we view the *Hinson* case, therefore, we are persuaded that the case does not detract from the trial court's discretion to order resales in cases like ours where there has already been a denial of confirmation and the only question remaining is whether the trial court should have ordered the additional remedy of a resale. We return then to the point at which we began this inquiry —the plain wording of the statute: "The trial court may, for good cause shown, order a resale of the property."

Believing that no words could more clearly express the discretionary nature of this power, we affirm.

Affirmed.

mandate of the statute that "a court * * * shall not confirm the sale unless * * * satisfied that the property * * * brought its true market value on the foreclosure sale."